IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN BROWN,<br>    Plaintiff | : <br> : <br> : | |
| v. | : <br> : | No. 1:21-cv-612 <br><br> (Judge Rambo) |
| KEVIN KAUFFMAN, *et al.*,<br>    Defendants | : <br> : <br> : | |

**MEMORANDUM**

Presently before the court is Defendants' motion to dismiss for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion will be granted, and the complaint will be dismissed without prejudice.

**I.     Background and Procedural History**

*Pro se* Plaintiff Norman Brown ("Brown") initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on April 3, 2021. (Doc. No. 1.) Brown, an inmate in the State Correctional Institution-Huntingdon ("SCI-Huntingdon") who was incarcerated in that institution at all relevant times, alleges that Defendants, who are all employed by SCI-Huntingdon, violated his civil rights by transferring him to a housing unit that is reserved for inmates with mental illnesses and by tampering with his food. (*Id.*)

According to the allegations in the complaint, Brown was transferred on August 22, 2019 from SCI-Huntingdon's BA-Unit to SCI-Huntingdon's CB-Unit. (*Id.* ¶ 11.) The complaint alleges that CB-Unit is another name for the Residential

Treatment Unit ("RTU"), and that the unit is reserved for inmates with "mental and/or psychological needs" that require medication. (*Id.* ¶ 12.)

Shortly after the transfer, Brown met with Defendant Maust, who was employed by SCI-Huntingdon as a counselor, on August 26, 2019. (*Id.* ¶ 13.) Brown asked why he had been moved to CB-Unit and whether he would soon be returned to BA-Unit. (*Id.*) Maust allegedly told Brown that his transfer was temporary and that he would eventually be returned to BA-Unit. (*Id.* ¶ 14.) Maust also allegedly told Brown that the transfer was based on a shortage of available living spaces in BA-Unit. (*Id.* ¶ 15.) The complaint alleges that it was not true that there was shortage of available living spaces in BA-Unit, as Brown had allegedly observed multiple vacant cells in the unit. (*Id.*) Brown also spoke with Defendant Hollibaugh on August 29, 2019, who provided the same explanation as to why Brown had been transferred to CB-Unit. (*Id.* ¶ 17.) The complaint alleges that Brown remains housed in CB-Unit to the present day. (*Id.* ¶ 19.)

The complaint also alleges that on February 3, 2019, Brown ate breakfast in the SCI-Huntingdon chow hall, which resulted in his "tooth starting to hurt" and sharp pains in his stomach. (*Id.* ¶ 20.) Later that day, he ate some peanuts that he had purchased from the prison commissary, which also caused a sharp pain in his stomach. (*Id.* ¶ 21.) On February 8, 2019, Brown purchased and ate a "cheese cake item" from the commissary, which caused him to develop "a slight headache

followed by his left ribs becoming plagued with sharp pains," which made Brown unable to stand. (*Id.* ¶ 22.) Brown also allegedly tasted a "medicine-taste" in the food. (*Id.*) Brown tried to have a bowel movement but could not do so. (*Id.* ¶ 23.)

The complaint alleges that the food Brown ate from the chow hall on February 3, 2019 and the food he ate from the commissary on February 3, 2019 and February 9, 2019 was "deliberately tainted and tampered with" by prison staff, "resulting in harassment and retaliatory treatment." (*Id.* ¶ 24.) He complained about the alleged food tampering via a grievance. (*Id.*) Defendant Kohler, who was employed by SCI-Huntingdon as a major, responded to the grievance. (*Id.*) Kohler allegedly represented that he had interviewed relevant staff members and concluded that nobody had tampered with Brown's food. (*Id.*) Brown alleges that he continues to experience pain and lightheadedness when he eats commissary food items and that he does not experience these symptoms when he eats commissary items that were purchased by other inmates. (*Id.* ¶ 25.) Brown asserts that this proves that prison staff members continue to tamper with his food. (*Id.*)

Brown allegedly filed a grievance to complain about his transfer to CB-Unit on August 29, 2019. (*Id.* ¶ 18.) His grievance was denied on September 26, 2019, and Brown appealed to Defendant Kauffman, the prison's Superintendent. (*Id.* ¶¶ 27-28.) Defendant Kauffman allegedly upheld the denial of the grievance on October 5, 2019. (*Id.* ¶ 29.) Brown then allegedly appealed to the Secretary's

3

Office of Inmate Grievances and Appeals ("SOIGA"), which upheld the denial. (*Id.* ¶¶ 30-31.)  Brown also alleges that he appealed his grievance regarding the alleged food tampering through all stages of administrative review, but that his appeals were denied by Kauffman and SOIGA.  (*Id.* ¶¶ 32-39.)

The complaint raises claims for violation of Brown's civil rights under 42 U.S.C. § 1983.  Specifically, the complaint asserts that based on Brown's transfer to CB-Unit, Defendants Kauffman, Hollibaugh, and Maust retaliated against Brown in violation of the First Amendment, subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment, and violated his right to equal protection in violation of the Fourteenth Amendment.  (*Id.* ¶ 43.) The complaint further asserts that Defendants Kauffman and Kohler exposed Brown to a serious risk of harm in violation of the Eighth Amendment and retaliated against him in violation of the First Amendment when they allowed prison staff to tamper with his food.  (*Id.* ¶ 48.)  Brown seeks declaratory relief declaring that Defendants' actions violated his constitutional rights and injunctive relief requiring Defendants to move him out of CB-Unit, order prison officials to stop contaminating his food, and stop housing mentally ill prisoners in the same housing unit as general population inmates.  (*Id.* at 8.)  He also seeks nominal, compensatory, and punitive damages.  (*Id.* at 8-9.)

4

Defendants moved to dismiss the complaint on July 12, 2021 and filed a brief in support of the motion on the same day. (Doc. Nos. 14-15.) Defendants argue that dismissal is appropriate because the complaint fails to allege that Kauffman and Kohler were personally involved in the alleged violations of Brown's rights, because Plaintiff has not alleged any actual harm or substantial risk of harm from being housed in CB-Unit, and because Plaintiff fails to state a retaliation claim upon which relief may be granted. (Doc. No. 15.) Briefing on the motion to dismiss is complete, and the motion is ripe for the court's disposition. (*See* Doc. Nos. 15, 19-20.)

## II.     Legal Standards

### A.     Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that

the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,

998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106).

**B.    Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

7

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III. Discussion

As noted above, Defendants raise three arguments for dismissal of the complaint: (1) that Brown fails to plead that Kauffman and Kohler were personally involved in the alleged violations of his civil rights; (2) that Brown fails to plead that he was subjected to any actual harm or risk of harm by being transferred to CB-Unit; and (3) that Brown has failed to plead a *prima facie* claim of retaliation. The court will analyze these claims *seriatim*.

### A. Brown Fails to Allege Kauffman and Kohler's Personal Involvement

The court will first analyze Defendants' argument that all claims against Kauffman and Kohler should be dismissed based on Brown's failure to allege their personal involvement. A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be evidence of personal direction or actual knowledge and acquiescence. *Id.* A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

In this case, the complaint names Kauffman and Kohler as Defendants, but there are no allegations of their personal involvement beyond the fact that they reviewed and denied Brown's grievances, (*see* Doc. 1 ¶¶ 24, 29, 37), which is insufficient to allege personal involvement under § 1983. *Dooley*, 957 F.3d at 374. Brown also argues that Kauffman was personally involved because he is the Superintendent and therefore oversees all prison operations and is responsible for all of the prison's executive orders. (Doc. 19 at 3-4.) Personal involvement under

9

§ 1983, however, cannot be based solely on a theory of *respondeat superior*, *Rode*, 845 F.2d at 1207, and there are no allegations that Kauffman personally directed the actions that allegedly violated Brown's rights or that Kauffman knew about the alleged violations and acquiesced in them. Accordingly, all claims against Kauffman and Kohler will be dismissed for Brown's failure to allege their personal involvement. Because Kauffman and Kohler are the only defendants named with respect to Brown's food tampering claim, that claim will correspondingly be dismissed.

### B. Brown Fails to State an Eighth Amendment Claim

The court will next review Brown's Eighth Amendment claim arising from his transfer to CB-Unit, which sounds in deliberate indifference to the conditions of Brown's confinement. To state a claim upon which relief may be granted for deliberate indifference to a prisoner's conditions of confinement under the Eighth Amendment, a plaintiff must allege that (1) he was incarcerated "under conditions posing a substantial risk of serious harm" to his health or safety, (2) the defendant was "deliberately indifferent" to that risk, and (3) the defendant's deliberate indifference caused the plaintiff harm. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citing *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)).

In this case, Brown alleges that his transfer to CB-Unit violated his rights under the Eighth Amendment, but he does not allege that the transfer posed a

substantial risk of serious harm to his health or safety. Although Brown alleges that CB-Unit is reserved for inmates with mental illnesses and that the unit housed many such inmates, there is no allegation that the proximity to inmates with mental illnesses actually caused any risk of harm to Brown. Furthermore, there is no allegation that Defendants' actions in transferring Brown to CB-Unit caused him any actual harm. Accordingly, because it is not clear from the complaint that the transfer to CB-Unit actually posed any risk to Brown's health or safety or that Brown suffered any harm as a result of the transfer, his Eighth Amendment claim arising from the transfer to CB-Unit will be dismissed.

### C. Brown Fails to State a Retaliation Claim

To state a First Amendment retaliation claim upon which relief may be granted, a plaintiff must allege (1) that he engaged in constitutionally protected conduct; (2) that defendants took retaliatory action against him that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a causal link between plaintiff's protected activity and defendants' retaliatory action. *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019) (citing *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 747, 752 (3d Cir. 2019)).

In this case, Brown alleges that his transfer to CB-Unit was retaliatory, but he fails to allege that he engaged in constitutionally protected conduct or that there was a causal connection between his actions and the transfer. Brown's only

allegation of constitutionally protected conduct is that the transfer was done "out of retaliation for his prior grievances formally filed," but Brown does not provide any details about those grievances, such as when they were filed, the subject matter of the grievances, whether the defendants or any other prison officials were implicated in the grievances, or whether he was granted any relief for the grievances.  Similarly, Brown fails to allege a causal connection between any grievances that he may have filed and the transfer to CB-Unit.  He does not allege whether the defendants were aware of the grievances or what facts indicate that the defendants were motivated by his filing of the grievances when they transferred him.  Thus, Brown's retaliation claim is essentially nothing more than his conclusory assertion that his transfer to CB-Unit was retaliatory in nature.  This is insufficient to state a claim upon which relief may be granted.

### D.  Brown Fails to State an Equal Protection Claim

Although Defendants do not make any arguments for dismissal of Brown's equal protection claim, the court will nonetheless review the claim under the screening provision of 28 U.S.C. § 1915(e)(2)(B)(ii), which requires federal courts to review complaints brought *in forma pauperis* and dismiss them "at any time" if the court determines that they fail to state a claim upon which relief may be granted.  Having conducted such a screening review, the court will dismiss Brown's equal protection claim, as he does not make any allegations to support the

claim beyond the conclusory assertion that his transfer to CB-Unit violated his right to equal protection.  (*See* Doc. 1 ¶ 43.)

### E. Leave to Amend Will Be Granted

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  The court will grant Brown leave to amend because the court cannot conclude that amendment would be inequitable or futile.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted, Brown's complaint is dismissed without prejudice, and Brown is granted leave to file an amended complaint.  An appropriate order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Dated: December 8, 2021